UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| C. GENE FOUST, )<br>)<br>Plaintiff, )<br>)<br>)<br>V. )<br>)<br>METROPOLITAN SECURITY SERVICES, INC., )<br>d/b/a WALDEN SECURITY, )<br>)<br>Defendant. ) | No. 3:10-CV-340<br>(VARLAN/SHIRLEY) |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and the orders of the District Judge [Doc. 35, 38, 47, 54] referring various pretrial motions in this case [Docs. 33, 36, 45, 52] to this Court for disposition. The parties appeared before the Court on September 27, 2011. Attorneys Katherine A. Young and Dale J. Montpelier were present representing the Plaintiff, Gene Foust. Attorneys Justin L. Furrow and J. Bartlett Quinn were present representing the Defendant, Walden Security.

**I.    BACKGROUND**

The Plaintiff was employed by the Defendant as a site supervisor, until his termination on May 19, 2009. [Ex. 1 to Doc. 1 at ¶ 12, 29]. The Plaintiff alleges that Walden Security terminated his employment because of his age and in retaliation for reporting sexual harassment and other incidents in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*, the

Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, and Tennessee common law retaliatory discharge. [Ex. 1 to Doc. 1 at ¶ 34, 35, 40, 41]. On July 29, 2011, the Defendant filed Walden Security's Motion for Summary Judgment [Doc. 25], which is still pending before the District Court.

## II. ANALYSIS

Now before the Court are the Defendant's request for Plaintiff's medical records, Plaintiffs' Motion to Strike Inadmissible Evidence Offered by Defendant to Support Its Motion for Summary Judgment [Doc. 33], Walden Security's Motion to Exclude Plaintiff's Expert Witness [Doc. 36], Plaintiff's Motion to Test Sufficiency of Defendant's Objections and Responses to Plaintiff's Request for Admissions [Doc. 45], and Plaintiff's Motion to Correct Exhibit A to Complaint [Doc. 52].

Rule 26 directs:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The scope of discovery is not limited to evidence that will be admissible at the trial of the case. Marshall v. Bramer, 828 F.2d 355, 357-58 (6th Cir.1987).

To be successful in his ADEA claim, the Plaintiff must demonstrate, by direct or circumstantial evidence, that the Defendant discharged or discriminated against him with respect to

2

his compensation, terms, conditions, or privileges of employment, because of his age, which will then shift the burden of production to the Defendant. See Geiger v. Tower Auto., 579 F.3d 614, 620-23 (6th Cir. 2009). A *prima facie* case of age discrimination under the Tennessee Human Rights Act may be established by showing that the Plaintiff: (1) was a member of the protected class, (2) was qualified for the position, (3) was terminated, and (4) was replaced by a substantially younger person. Bundy v. First Tenn. Bank Nat. Ass'n, 266 S.W.3d 410, 416-17 (Tenn. Ct. App. 2007).

As to damages for a successful plaintiff, although not the preferable relief in all cases, the Sixth Circuit has held that front pay is "an available form of equitable relief in ADEA actions." Roush v. KFC Nat'l Mgmt. Co., 10 F.3d 392, 398 (6th Cir. 1993) (citing Davis v. Combustion Eng'g, Inc., 742 F.2d 916, 923 (6th Cir. 1984)). In determining the appropriate amount of front pay to award a plaintiff, the jury should consider:

> an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount table to determine the present value of future damages and other factors that are pertinent on prospective damage awards.

Id. at 399 (quoting Shore v. Fed. Express Corp., 777 F.2d 1155, 1160 (6th Cir. 1985) (internal quotations omitted)).

The Court has heard the parties' positions on these motions, and the Court finds as follows:

**A.     Defendant's Request to Obtain Plaintiff's Medical Records**

The Defendant requests that the Court order that it may obtain the Plaintiff's medical records as discoverable. In support of that request, the Defendant asserts that the contents of the medical records are relevant to the Plaintiff's request for front pay, as a part of the analysis of his work life

3

expectancy. The Plaintiff argues that the discovery period in this case has close and that the medical records are wholly irrelevant to the analysis of his front pay claim.

On July 28, 2011, the parties presented for a telephone conference, during which this issue was discussed. At that time, the Court found that the Defendant's request for medical records was overly intrusive in this case but found that the history the Plaintiff provided to his physicians and other medical personnel could be relevant and could lead to the discovery of admissible evidence. During that call, it was determined that counsel for the Plaintiff would obtain his medical records from the relevant time period and produce any portions of the records related to statements made or history given by the Plaintiff to his physician, with redaction where appropriate. The Defendant's broad request for discovery of the Plaintiff's medical records was denied at that time.

The Defendant renewed his request for the Plaintiff's medical records in September, asserting for the first time that the records may have a bearing on a front pay determination. The parties presented for another telephone conference on this issue on September 13, 2011, and after considering the arguments of both parties, the Court directed the Plaintiff to inquire into the number of doctors he has seen since 2009 and the purposes for which he saw each of them. At the September 27, 2011 hearing, the Plaintiff produced a list of five doctors, with contact information, an estimated number of visits to each, and costs, where possible, for obtaining copies of the records. The Plaintiff represented that the list encompassed the entirety of the physicians seen by the Plaintiff since 2009.

During the hearing, the Plaintiff again argued that the Defendant should be barred from obtaining the Plaintiff's medical records because the time for discovery has closed and because the contents of the records have no bearing on a front pay award determination. Plaintiff's counsel

4

further asserted that he believes the Defendant stipulated to the fact that the parties would not delve into medical records because no medical damages are being sought in this case. The Plaintiff contended that a dangerous precedent would be created by the allowance of the discovery of the Plaintiff's medical records here and that the Defendant will not be able to utilize the contents of the records since the time for disclosure of experts has passed.

The Defendant again contended that the medical records bear relevance to front pay in terms of the Plaintiff's work life expectancy. The Defendant further argued that the Plaintiff's argument against the Defendant obtaining the medical records goes more to admissibility at trial, rather than discoverability, as it should at this stage. The Defendant represented that it would pay for the costs associated with obtaining the medical records if allowed by the Court to obtain them. Neither party cited law applicable to the determination of whether medical records were relevant and discoverable as related to a determination of front pay.

The Court finds that the Defendant's request for discovery of the Plaintiff's medical records is well-taken, in part. After considering the allegations in this suit, the nature of the documents requested, and the applicable rules of evidence, the Court finds that production of the medical records from the physicians seen by the Plaintiff from January 1, 2009 to the present is reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1). However, given the confidential nature of a party's medical records, the Court finds that the records must be viewed by the Defendant under protective order of attorney's eyes only. If after viewing the records, the Defendant determines that it wishes to utilize any portion of the medical records at trial or in any other way, the Defendant must seek further relief to do so from the Court at that time.

The Plaintiff shall obtain all medical records from the five doctors he has seen since January 1, 2009 and to the present and **SHALL PRODUCE** a true copy of all records to the Defendant within twenty-four hours of receipt of the records. The Defendant shall bear the total cost of obtaining the records from the Plaintiff's physicians. The Plaintiff is **DIRECTED** to obtain an invoice/statement/receipt from each medical care provider and provide them to the Defendant for reimbursement. The Defendant shall then reimburse the Plaintiff in full and shall return the medical records to the Plaintiff at the conclusion of this matter.

**B.     Plaintiffs' Motion to Strike Inadmissible Evidence Offered by Defendant to Support Its Motion for Summary Judgment [Doc. 33]**

The Plaintiff has filed a motion to strike, which request that paragraphs 6, 8, and 9[1] of Exhibit C to Walden Security's Motion for Summary Judgment [Doc. 25], Whitney Fair's affidavit, be stricken because they are unsworn statements and inadmissible hearsay in violation of 28 U.S.C. § 1746 and Rule 56 of the Federal Rules of Civil Procedure. As a motion to strike is the improper vehicle for the Plaintiff's motion, the Court treats the Plaintiff's motion as an objection made under Rule 56(c)(2), which provides: "A party may object that the material cited [in a motion for summary judgment] to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

---

[1] Plaintiffs' Motion to Strike Inadmissible Evidence Offered by Defendant to Support Its Motion for Summary Judgment [Doc. 33] lists paragraphs 3, 6, and 9 as the ones to which he is objecting. However, at the September 27 hearing, Plaintiff's counsel corrected that it intended to object to paragraphs 6, 8, and 9 and represented that the inclusion of paragraph 3 and exclusion of paragraph 8 in its motion were unintentional errors.

The Defendant responds [Doc. 43] that the email statements by Stephen Head and Wesley Simmons, mentioned in Fair's affidavit, are not offered for their truth and are thus not inadmissible hearsay. The Defendant instead asserts that the statements are being offered to show Ms. Fair's state of mind when she made the decision to fire the Plaintiff. The Defendant further contends that the statements in paragraphs 6, 8, and 9 are offered to prove Ms. Fair's good faith belief that the allegations about the Plaintiff, which appear in the emails, were true and that they were a factor in her decision to terminate the Plaintiff's employment.

By definition, hearsay "is a statement . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. In this case, the Court finds that the statements in paragraphs 6, 8, and 9 of Exhibit C to the Defendant's motion for summary judgment [Doc. 25], referring to emails received by the affiant, Ms. Fair, are offered not to prove the truth that the Plaintiff actually cursed at his subordinates, as described in the emails, but only as evidence that Ms. Fair believed that the Plaintiff had done so.

Accordingly, the Court finds that Plaintiffs' Motion to Strike Inadmissible Evidence Offered by Defendant to Support Its Motion for Summary Judgment [Doc. 33], here treated as a Rule 56(c)(2) objection to the admissibility of the evidence relied on to prove a fact in the Defendant's motion for summary judgment, is not well-taken and will be **DENIED**.

C.    **Walden Security's Motion to Exclude Plaintiff's Expert Witness [Doc. 36]**

The Defendant moves to exclude Dr. John Moore's testimony as not in compliance with Rules 702 and 403 of the Federal Rules of Evidence. The Defendant asserts that the damages and front pay calculations performed by Dr. Moore are simple mathematics and that Dr. Moore did not

use any "scientific, technical, or other specialized knowledge" in his calculations. Accordingly, the Defendant argues that Dr. Moore's testimony will not assist the trier of fact, as required by Rule 702 of the Federal Rules of Evidence. The Defendant also contends that Dr. Moore's having testified will prejudice the jury and cause it to find liability simply because he testified as an expert.

In response [Doc. 37], the Plaintiff asserts that Dr. Moore's testimony should be allowed because as the Defendant noted, Dr. Moore used statistical work expectancies in his calculations, which the Plaintiff contends are technical or specialized knowledge the jury would not otherwise possess. The Plaintiff contends that Dr. Moore's testimony on life expectancy is necessary despite the Plaintiff's availability to testify to own expectations as to the length of his life because the Plaintiff is not an expert on such matters. Additionally, Dr. Moore will testify regarding inflation rates, discount rates, and their relationship to present value, which the Plaintiff argues is also specialized knowledge.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court confirmed that a trial court should serve as a gatekeeper in regards to proposed expert testimony, and should prevent the jury from being overwhelmed by unsupportable speculation cloaked as expertise. 509 U.S. at 595-96. In response to Daubert and subsequent decisions, Rule 702 of the Federal Rules of Evidence has been amended and now provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

8

Fed. R. Evid. 702. The Daubert "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151-52 (1999).

Here, neither party challenges Dr. Moore's qualifications in the form of his knowledge, skill, experience, training, or education. Instead, the Defendant argues that Dr. Moore's testimony will go to a matter, which does not require the testimony of an expert and for which Dr. Moore's testimony will not assist the jury. At the September 27, 2011 hearing, in an effort to demonstrate the ease of the calculations, which would be required of the jury at trial, counsel for the Defendant discussed the calculations necessary for determining back pay and front pay. Rather than showing the simplicity of the damages calculations as intended, the Defendant's argument necessarily required the use of Dr. Moore's work life expectance calculations, showing the lack of ease of determining damages at trial without his testimony.

After reviewing the applicable law, the Report of Dr. John R. Moore [Ex. A to Doc. 36], and the arguments of the parties, the Court finds that Dr. Moore's testimony will both utilize technical or specialized knowledge and assist the jury in understanding the damages issues presented to it at trial. See Fed. R. Evid. 702. Accordingly, Walden Security's Motion to Exclude Plaintiff's Expert Witness [Doc. 36] is **DENIED**, and Dr. Moore's testimony will be allowed.

D.  **Plaintiff's Motion to Test Sufficiency of Defendant's Objections and Responses to Plaintiff's Request for Admissions [Doc. 45]**

Plaintiff's motion to test sufficiency requests that the Court either deem the responses, or lack thereof, cited in the Plaintiff's motion admitted, or order the Defendant to respond to the requests designated by the Court by a specified date. The Plaintiff's motion asserts that pursuant

9

to Rule 36 of the Federal Rules of Civil Procedure, he served 86 requests for admission on the Defendant in an effort to streamline the trial of this matter. The Plaintiff argues that the "Defendant objected to 70 of the requests on the basis of relevance, provided 4 denials that should have been admissions, and refused to answer another 7 requests for ostensible lack of information." [Doc. 45 at 2]. The Defendant responds [Doc. 53] that it properly responded to each of the Plaintiff's requests and properly objected to requests, which involved information it deemed outside of the scope of Rule 26.

Requests to admit served under Rule 36 may relate to "any matters within the scope of Rule 26(b)(1)," meaning that the information must be relevant. Fed. R. Civ. P. 36(a)(1). As stated above, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 36(a)(4), controlling answers to requests to admit, states:

> Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert a lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). Further, upon motion to determine the sufficiency of an answer or objection, "[u]nless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6). Considering the relevant law, the Court turns to the sufficiency of the Defendant's answers in the order in which they were addressed at the September 27, 2011 hearing.

10

### 1. Requests 66, 67, 75, 76, 77, 78, 79, and 86

The parties agree that the Defendant provided qualified admissions, subject to relevance objections, to these requests. Accordingly, the Court finds that the Plaintiff has obtained the information requested in each of these requests and that the Defendant's answers to Requests 66, 67, 75, 76, 77, 78, 79, and 86 are sufficient.

### 2. Requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 49, 50, 51, 52, 53, 55, 56, 57, 59, 62, 63, and 64

$59^2$ of the objections made by the Defendant were on the basis that the employee discipline referenced in the requests was of employees, whom the Defendant does not consider to have been similarly situated to the Plaintiff. [Doc. 53 at 1]. The Court finds that the issue of whether non-supervisory employees are similarly situated to the Plaintiff, who held a supervisory position, is one that is before the District Court as part of the Defendant's motion for summary judgment. [see Doc. 25 at 11-13]. The standard for requests to admit, however, is not that they are admissible at trial, but that they fall within the scope of Rule 26(b)(1). The Court finds that the discipline of the employees referenced in the requests is relevant within the scope of Rule 26 in that this information is reasonably calculated to lead to admissible evidence should such employees be deemed similarly situated. In determining that theses requests fall within the scope of Rule 26 and must be answered,

---

²Several of the 59 objections (Requests 44, 55, 58, 60, and 61) also fall within another category of the Plaintiff's request to determine the sufficiency of answers and objections. Those that fall within another category are addressed with that category in this Memorandum and Order.

the Court is not ruling on whether or not the facts admitted or denied in those requests will be admissible at trial as related to similarly situated employees at this time. The Court is only ruling that these facts are discoverable, pending a ruling on whether some or all of the employees referenced in these requests are deemed similarly situated. The Defendant is **ORDERED** to answer Requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 49, 50, 51, 52, 53, 55, 56, 57, 59, 62, 63, and 64. The objections to Requests 44, 55, 58, 60, and 61 are addressed in the following sections.

### 3. Requests 82, 83, and 84

Requests 82, 83, and 84 concern a sexual harassment complaint made by a former employee, who was terminated by the Defendant. The Plaintiff contends the former employee was terminated for making such complaints. The Defendant argues that the facts involved in these requests are "wholly irrelevant" because the former employee was not employed in the same facility as the Plaintiff, was not supervised by the Plaintiff, and did not complain to the Plaintiff about the alleged harassment. [Doc. 53 at 3]. The Defendant further contends that any evidence derived from its admission of Requests 82, 83, and 84 would likely be inadmissible under Rule 404(b) of the Federal Rules of Evidence. Fed. R. Evid. 404(b). At the hearing, the Plaintiff argued that the events referenced in Requests 82, 83, and 84 relate to his retaliatory discharge claims under the ADEA, THRA, TPPA, and Tennessee common law.

Proving a *prima facie* case of retaliatory discharge under the ADEA and THRA requires a showing by the plaintiff that 1) the plaintiff engaged in a protected activity; 2) the defendant knew of the plaintiff's involvement in that protected activity; 3) the defendant took employment action

12

adverse to the plaintiff; and 4) a causal connection exists between the protected activity engaged in by the plaintiff and the adverse employment action suffered. Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008) (utilizing the McDonnell Douglas/Burdine evidentiary framework for analyzing claims of retaliatory discharge brought under the ADEA). In this case, the Plaintiff in part bases his retaliation claim on the allegations that his position was terminated after he reported the sexual harassment of his co-workers to the Defendant. [Doc. 32 at 26-27].

Without making any ruling with regard to the admissibility of such evidence at trial, the Court finds that the Plaintiff's requests referring to possible adverse employment action taken against the former employee in response to sexual harassment complaints, relate to the Plaintiff's argument that similar adverse employment action was taken against him for a like cause. Accordingly, the Court finds that Defendant's answers to Requests 82, 84, 84 are reasonably calculated to lead to the discovery of admissible evidence and thus fall within the scope of discoverability under Rule 26(b). See Fed. R. Civ. P. 26(b)(1). The Defendant is **ORDERED** to answer Requests 82, 83, and 84.

### 4. Requests 31, 44, 60, and 61

In its responses to Requests 31, 44, 60, and 61, the Defendant denied the requests because the Plaintiff improperly and mistakenly wrote the employee's name to which the requests referred in the reverse order ("Benami Moti" versus "Moti Benami"). The Defendant argues that it "could not have responded as though the requests were intended to refer to 'Moti Benami' without engaging in speculation as to Plaintiff's intent, which is not required when responding to a request for admission." [Doc. 53 at 3]. However, "[a] denial must fairly respond to the substance of the

13

matter." Fed. R. Civ. P. 36(a)(4). In this case, the Court finds that the Defendant knew which employee to whom the requests referred and denied the Plaintiff's requests solely on the basis of a typographical error made by Plaintiff's counsel. Accordingly, the Defendant is **ORDERED** to serve amended answers to Requests 31, 44, 60, and 61. See Fed. R. Civ. P. 36(a)(6).

### 5. Requests 12 and 13

The Court finds that the Defendant failed to adequately respond to Requests 12 and 13 because of questions related to the authenticity of the email in question, attached to the requests as Exhibit G. The Defendant is **ORDERED** to provide qualified admissions for Requests 12 and 13 and to attach its bate-stamped copy of the email at issue as "Exhibit G-1" to its amended answers.

### 6. Requests 54 and 58

The Court finds that the Defendant's responses to Requests 54 and 58 are sufficient because the Defendant formulated its response after making a reasonable inquiry and was unable to determine whether it could admit or deny the requests.

### 7. Requests 71 and 72

The Court finds that the Defendant's responses to Requests 71 and 72 are sufficient because the Defendant formulated its response after making a reasonable inquiry and was unable to determine whether it could admit or deny the requests.

### 8. Request 85

The Plaintiff withdrew his motion to test the sufficiency of the answer to Request 85 at the September 27, 2011 hearing. Therefore, the Plaintiff's Motion to Test Sufficiency of Defendant's Objections and Responses to Plaintiff's Request for Admissions is **DENIED AS MOOT** with regard to Request 85.

### E. Plaintiff's Motion to Correct Exhibit A to Complaint [Doc. 52]

Plaintiff's Motion to Correct Exhibit A to Complaint requests that the Court allow him to resubmit Exhibit A, the Tennessee Human Rights Commission ("THRC") Employment Discrimination Complaint, to his Complaint [Doc. 1] because an earlier copy of it without the official stamp, indicating that it was received by the THRC [see Doc. 1 at 9], was inadvertently attached to the Complaint initially. The Defendant ha no objection to this request. Accordingly, Plaintiff's Motion to Correct Exhibit A to Complaint [Doc. 52] is **GRANTED**.

## III. CONCLUSION

In sum, the Defendant's request for Plaintiff's medical records is **GRANTED**, to the extent described above. The Plaintiff **SHALL PRODUCE** his medical records from each of the five physicians he has seen from January 1, 2009 until the present. The Plaintiff **SHALL COMPLETE** this production within twenty-four hours of his receipt of the records from the physicians. The Defendant shall incur the costs of obtaining the medical records. Plaintiffs' Motion to Strike Inadmissible Evidence Offered by Defendant to Support Its Motion for Summary Judgment **[Doc. 33]** is **DENIED.** Walden Security's Motion to Exclude Plaintiff's Expert Witness **[Doc. 36]** is

15

Case 3:10-cv-00340-TAV-CCS   Document 56   Filed 10/12/11   Page 15 of 16   PageID #: 800

**DENIED**.  Plaintiff's Motion to Test Sufficiency of Defendant's Objections and Responses to Plaintiff's Request for Admissions **[Doc. 45]** is **GRANTED IN PART** and **DENIED IN PART**, to the extent more fully stated above.  Plaintiff's Motion to Correct Exhibit A to Complaint **[Doc. 52]** is **GRANTED**.

    **IT IS SO ORDERED.**

ENTER:

    s/ C. Clifford Shirley, Jr.
    United States Magistrate Judge