# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| C. GENE FOUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:10-CV-340 |
| | ) (VARLAN/SHIRLEY) |
| | ) |
| METROPOLITAN SECURITY SERVICES, INC., | ) |
| d/b/a WALDEN SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This civil action is before the Court on the Motion for Summary Judgment [Doc. 25],

filed by defendant, Metropolitan Security Services, Inc., d/b/a Walden Security ("Walden"),

pursuant to Rule 56 of the Federal Rules of Civil Procedure. In his complaint [Doc. 1-1],

plaintiff C. Gene Foust claims he was subject to age-based discrimination in violation of the

Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* (the "ADEA") and the

Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101, *et seq.* (the "THRA").

Plaintiff also claims he was unlawfully retaliated against for complaining about age-based

discrimination and what he believed were sexual harassment activities in violation of the

ADEA, the THRA, the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 (the

"TPPA"), and Tennessee common law.

In the motion for summary judgment [Doc. 25], Walden submits that it is entitled to

summary judgment as a matter of law because there are no genuine issues of material fact

in dispute in regard to any of plaintiff's claims. Plaintiff has responded in opposition [Doc. 32] to the motion for summary judgment, Walden has filed a reply [Doc. 40] to that response, and after obtaining leave of Court [Doc. 50], plaintiff filed a sur-reply [Doc. 51]. The Court has reviewed the relevant law, the pending motion, the response, reply, and sur-reply briefs, and the supporting documents and exhibits. After careful consideration, and for the reasons stated herein, the Court will **GRANT** Walden's motion for summary judgment [Doc. 25] and **DISMISS** plaintiff's claims.

## I.    Facts

Walden provides contract security services to commercial and governmental facilities [Doc. 25-1, ¶ 3]. On January 17, 2007, plaintiff began working at Walden's Knoxville location as a security officer assigned to a post at the Hoskins Operations Center (the "HOC"), a facility owned by the Knoxville Utility Board ("KUB"), a Walden client [Doc. 25-2, pp. 4-6]. As a security officer at the HOC, plaintiff's duties were to provide access control security, monitor security cameras and alarms, and patrol KUB sites [*Id.*, pp. 6-8]. Around 2007, plaintiff was promoted to captain, also called a site supervisor, given two raises, and transferred to KUB's MBW facility [*Id.*, pp. 5-6; Doc. 32-2; Doc. 32-4]. Plaintiff's duties as captain were to supervise all security officers to ensure compliance with orders, make schedules, and monitor security coverage [Doc. 25-2, p. 9]. In January 2008, plaintiff was transferred back to the HOC [Doc. 25-2, pp. 10-11]. As a captain at the HOC, plaintiff was given another raise and his responsibilities increased, including supervising more security officers and overseeing more sites [*Id.*, pp. 11-12].

2

During the relevant time period, plaintiff reported to and was supervised by Hope Beason ("Beason"), operations manager for Walden in Knoxville [Doc. 25-2, p. 6]. Plaintiff also reported to and was supervised by Gabriel Griffin ("Griffin"), field supervisor for Walden in Knoxville [Doc. 32-8, p. 4]. During this time, Whitney Fair ("Fair") was human resource manager for Walden in Knoxville [Doc. 32-7, pp. 6-7], Kevin Vineyard ("Vineyard") was general manager for Walden in Knoxville [Doc. 32-6, p. 3], and Etelka Murphy ("Murphy") was vice president of human resources for Walden in Chattanooga [Doc. 32-7, pp. 6-7]. Fair reported to and was supervised by Vineyard and Murphy [*Id.*].

Walden utilizes an employee handbook which contains the company's policies and disciplinary procedures. Plaintiff asserts that these policies and procedures apply to all employees, regardless of rank, and that Walden's operations and human resource managers have discretion to determine whether and what level of discipline to impose on employees [Doc. 32, p. 7; Doc. 32-6, p. 8]. Plaintiff describes Walden's disciplinary procedures as "formal procedures" and asserts that the steps in the disciplinary process, from least to most severe, include an employee counseling record (an "ECR"), a supervisor's discussion, a written warning, a final written warning, suspension, and termination [Doc. 32, p. 7].

After Fair became human resources manager, plaintiff asserts that he had a problem with her arising out of her favorable treatment of Michael Greenberg ("Greenberg"), a younger employee [Doc. 32, pp. 6-7]. Plaintiff asserts that Greenberg behaved inappropriately, deserted his post, and complained to Fair that plaintiff got mad at him [Doc. 32-1, pp. 16-17]. Plaintiff asserts that Fair did not investigate the Greenberg incident, even

3

though desertion from post without sufficient reason was a terminable offense. Plaintiff also asserts that on several occasions, Fair behaved towards other employees in a manner that could be viewed as sexual harassment. Plaintiff asserts that he reported Fair's behavior to Vineyard and Beason, but that nothing was done. Plaintiff also asserts that two female employees complained to him that they were being sexually harassed, that plaintiff reported their complaints to Walden management, but that plaintiff was told the complaints were none of his business and that nothing could be done unless the female employees submitted written statements [Doc. 32-1, pp. 23-24].

On December 4, 2008, Walden suspended plaintiff for three days without pay [Doc. 25-2, pp. 14-18]. According to the ECR issued following plaintiff's suspension, he was suspended because Walden management became aware of complaints that plaintiff had behaved unprofessionally and in an aggressive manner towards Russ Salmans ("Salmans"), a representative of a KUB vendor who was also one of Walden's clients [*Id.*, pp. 14-19, 64]. Salmans complained that plaintiff lost his temper and told Salmans he had breached security [*Id.*, pp. 13-14, 21-23]. The ECR also noted that other KUB employees had complained that plaintiff behaved aggressively towards them at a KUB parking lot during football games [Doc. 25-2, pp. 64-66]. Walden asserts that this conduct was below the standard of conduct it expects for captains and that plaintiff's behavior violated Walden's policies. According to plaintiff, Beason and Fair informed him of the suspension and at that meeting, plaintiff verbally "confronted Fair face-to-face with . . . past incidents of [sexual harassment] behavior

4

which he felt were illegal and for which [Walden] could be legally liable." [Doc. 32-1, p. 13; Doc. 32-7, pp. 22-23].

After plaintiff returned from his suspension, Walden issued him a written final warning (the "final warning") on December 9, 2008 [Doc. 25-2, p. 66]. The final warning referenced plaintiff's conduct underlying the December 4, 2008 suspension and stated that plaintiff's conduct violated Walden's policies [*Id.*, pp. 21-23, 66]. The final warning also listed a "proposed solution," namely, that plaintiff's interactions with others, including client representatives, subordinates, peers, and account team members, were expected to be professional [*Id.*, p. 66]. The final warning also warned that "[a]ny future violation(s) will result in an immediate termination." [*Id.*]. After plaintiff was given the final warning, plaintiff asserts that he verbally confronted Griffin regarding conduct he believed constituted sexual harassment by Griffin [Doc. 32, pp. 16-17].

On April 12, 2009, plaintiff sent an email to Vineyard (the "April 12, 2009 email") [Doc. 32-24], which he asserts contains complaints of age-based discrimination and of incidents involving sexual harassment activities by Walden employees. On April 20, 2009, plaintiff issued an "Overtime" memo he had drafted to security officers and posted the memo for them to see [Doc. 25-1, p. 6; Doc. 25-2, pp. 33-38; Doc. 32, p. 18].

In May 2009, plaintiff alleges that he reported to Griffin that Wesley Simmons ("Simmons"), a younger security officer under plaintiff's supervision at the HOC, was dissatisfied with his work schedule. On May 7, 2009, plaintiff wrote an email to Griffin stating that Steven Head ("Head"), another younger security officer under plaintiff's

5

supervision, was being difficult in regard to scheduling issues (the "May 7, 2009 email") [Doc. 32-24]. A short time afterwards, plaintiff was involved in a verbal confrontation with Simmons and Head. According to Simmons, who lodged a complaint with Walden regarding the verbal confrontation, it involved cussing, yelling, and insulting language by plaintiff [Doc. 25-2, pp. 28-30; Doc. 25-3, ¶¶ 3-9; Doc. 1-1, p. 18, ¶ 27]. After Fair requested statements from Simmons and Head regarding the incident, she testified that both Simmons and Head sent emails to her detailing the verbal confrontation [Doc. 25-3, ¶¶ 4-9, pp. 6, 8]. At his deposition, however, plaintiff denied that he cursed or yelled at Simmons or Head during the incident [Doc. 25-2, p. 29].[1] Rather, plaintiff alleges that following the incident, Griffin and Fair solicited negative reports from Simmons and Head and used those negative reports as justification for terminating plaintiff. On May 9, 2009, plaintiff issued a "Chain of Command" memo he had drafted to security officers [Doc. 25-1, p. 13; Doc. 25-2, pp. 33-38; Doc. 32, p. 18].

Walden performed an investigation into the alleged verbal confrontation between plaintiff, Simmons, and Head [Doc. 25-2, pp. 28-30; Doc. 25-3, ¶¶ 3-9; Doc. 1-1, p. 18, ¶ 27]. Walden asserts that its investigation into the confrontation revealed the existence of the "Overtime" and the "Chain of Command" memos. Walden asserts that the substance of these memos contravened Walden's published policies [Doc. 25-1, ¶¶ 4-6, pp. 6-17].

---

[1]In his complaint, plaintiff alleges that he had a "verbal altercation" with Simmons and Head on May 11, 2009 [Doc. 1-1, p. 18, ¶ 27].

6

Walden terminated plaintiff's employment on May 19, 2009. Walden asserts that plaintiff was terminated because his unprofessional and aggressive behavior towards Head and Simmons violated the December 9, 2008 final warning, and because the memos plaintiff drafted and issued to security officers directly contradicted Walden's published policies [Doc. 25-2, pp. 25-27; Doc. 25-1, ¶¶ 4-6, pp. 6-17]. Fair testified that she, Vineyard, and Griffin made the decision to terminate plaintiff [Doc. 32-7, p. 19]. Following plaintiff's termination, plaintiff asserts that Josh Coffelt ("Coffelt"), age 23, replaced him as captain at the HOC [Doc. 32-5].

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the

non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Analysis

### A.    Age-Based Discrimination Claims

The ADEA provides that it is unlawful for an employer "to fail to refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a). The relevant part of the THRA provides that it is a discriminatory practice for an employer to "[f]ail or refuse to hire or discharge any person or otherwise discriminate against an individual with respect to compensation, terms,

8

conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age, or national origin[.]" Tenn. Code Ann. § 4-21-401(a)(1). The Tennessee legislature has made clear that the purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964 . . . and [the ADEA] of 1967, as amended[.]" *Id.* § 4-21-101(a)(1). Thus, the same analysis applies to plaintiff's age-based discrimination claim under the THRA as plaintiff's age-based discrimination claim under the ADEA. *Bender v. Hecht's Dep't Stores,* 455 F.3d 612, 620 (6th Cir. 2006) (applying the same analysis to an age-based discrimination claim brought under the THRA as an age-based discrimination claim brought under the ADEA); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) ("Tennessee courts have 'looked to federal case law applying the provisions of the federal anti-discrimination statues as the baseline for interpreting and applying' the [THRA].") (citation omitted).

A plaintiff "may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination." *Grubb v. YSK Corp.*, 401 F. App'x 104, 113 (6th Cir. 2010) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Wexler*, 317 F.3d at 570 (internal quotation marks omitted)). Circumstantial evidence, on the other hand, "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* (citation omitted).

9

Regardless of whether a plaintiff proves his claim through direct or circumstantial evidence, the burden of persuasion remains on the plaintiff to demonstrate "by a preponderance of the evidence [ ] that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs.*, — U.S. —, —, 129 S. Ct. 2343, 2350-51 (2009); *see Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010).

Claims based on circumstantial evidence are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410-11 (6th Cir. 2008). Under the *McDonnell Douglas* framework, the burden is on the plaintiff to first establish a prima facie case under the relevant statute. *Id.*, 411 U.S. at 802. A plaintiff establishes a prima facie case by showing, *inter alia*, that (1) the plaintiff was a member of a protected class; (2) the plaintiff was discharged; (3) the plaintiff was qualified for the position; and (4) the plaintiff was replaced by a person outside the protected class. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). The plaintiff can also satisfy the fourth prong by showing that the plaintiff was "treated differently from similarly situated employees outside the protected class." *Martin*, 548 F.3d at 410-13 (giving the elements of a prima facie case under the ADEA) (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)).

In this case, plaintiff has not brought forth direct evidence of discrimination and must establish a prima facie case for each of his age-based discrimination claims in accordance with the *McDonnell Douglas* burden-shifting framework. Plaintiff's claims are premised on his suspension, the final warning, and his termination. Walden asserts that it is entitled to

summary judgment in regard to each of these claims because plaintiff has failed to show that he was treated differently from similarly-situated employees outside the protected class. Plaintiff argues that he has established a prima facie case for each of his claims and identified younger employees who were similarly-situated to him in all relevant aspects of their employment who were treated differently than plaintiff based on age.

Before the Court considers whether plaintiff has made his prima facie showings, the Court first addresses an issue raised by Walden. Walden argues that, in light of *Gross*, plaintiff cannot proceed at the summary judgment stage with both his age-based discrimination claims and his retaliation claims [Doc. 40, pp. 12-15]. In *Gross*, the U.S. Supreme Court clarified that an ADEA claimant bears the burden of establishing that his age was the "but-for" cause of the employer's adverse employment action. *Id.*, 129 S. Ct. at 2351. To prevail on his retaliation claim under the TPPA, on the other hand, plaintiff must establish an "[e]xclusive causal relationship" between his termination and his alleged complaints. *See Howard v. Life Care Centers of Am., Inc.*, E2004-00212-COA-R3CV, 2004 WL 1870067, at *3 (Tenn. Ct. App. Aug. 20, 2004). According to Walden, plaintiff cannot simultaneously claim "but-for" causation on his ADEA claims while also arguing that his discharge was motivated by his alleged complaints of age-based discrimination and sexual harassment activities. Plaintiff argues that he can proceed on all claims.

Upon review and consideration of the arguments and cases discussed in the parties' briefs, and while the Court agrees with Walden that an ADEA claimant cannot satisfy a "but-for" burden if another unlawful reason motivated the employer's decision, *see Culver v.*

11

*Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009), the Court concludes that plaintiff can proceed, at least at the summary judgment stage, with his age-based discrimination claims as well as his retaliation claims. *See Belcher v. Service Corp. Intern.*, No. 2:07-CV-285, 2009 WL 3747176, at *3 (E. D. Tenn. Nov. 4, 2009) (permitting, post-*Gross*, claims under both the ADEA and Title VII to go forward on summary judgment). *Gross* held that the ADEA does not authorize "mixed-motive" claims because the ADEA requires a showing of "but-for" causation. *Id.*, 129 S. Ct. at 2352, 2350. *Gross* did not, however, address the issue of whether a discrimination claimant can present alternative theories on summary judgment. Under the circumstances of this case, in which plaintiff has no direct evidence of discrimination, the Court will not prohibit plaintiff from articulating the proof he contends will establish prima facie cases and that Walden's proffered reasons for its employment decisions were pretextual. Moreover, the U.S. Court of Appeals for the Sixth Circuit has permitted the presentation of alternative or inconsistent theories to a jury if the claims are supported by evidence. *See, e.g.*, *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 921 (6th Cir. 1991) (noting that "mutually exclusive" claims are permissible provided the jury is adequately instructed on those alternate theories); *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684, 690 (6th Cir. 2007) (same).

## 1.    Similarly-Situated

Walden argues that plaintiff cannot establish a prima facie case of age-based discrimination because he cannot prove Walden treated him differently than a similarly-situated, supervisory employee outside the protected class who engaged in similar conduct.[2]

In response, plaintiff argues that he was similarly-situated to younger employees who engaged in similar conduct but, unlike plaintiff, were not disciplined or terminated for the same conduct or did not receive the same level or type of discipline as plaintiff.  The proposed comparators identified by plaintiff are Simmons, James Bryant ("Bryant"), Ken Bailey ("Bailey"), and Gary Prater ("Prater").  Plaintiff argues that these employees were similarly-situated to him because they were covered by the same employee handbook and disciplinary procedures, regardless of rank and job description.  He asserts that Walden's treatment of him, as a captain, should be compared to its treatment of security officers because the job descriptions of security officers and captains are very similar and because plaintiff filled in for security officers and performed the same duties.

Walden responds that the comparators identified by plaintiff are not similarly-situated because all of them, except for Prater, were security officers at the time they received the disciplinary actions referenced by plaintiff.  Walden also asserts that the conduct for which

---

[2]Walden asserts that plaintiff's THRA claims in regard to his December 4, 2008 suspension and the December 9, 2008 final warning are barred by the one-year statute of limitations contained in the Tennessee statute of limitations for civil actions.  *See* Tenn. Code Ann. §§ 4-21-101, *et seq.*, § 4-21-311(d).  Plaintiff acknowledges that his claims relating to these incidents cannot be stand alone claims under the THRA [Doc. 51, p. 2].

13

Prater was disciplined as a captain was not similar to the conduct for which plaintiff was suspended, given the final warning, or terminated.

As noted above, in a similarly-situated analysis, a plaintiff must identify at least one comparable employee outside the protected classification who was similarly-situated in all relevant respects, but who nonetheless received more favorable treatment. A plaintiff, however, need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated." Rather, a plaintiff need only show that they are similar in all relevant aspects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610-11 (6th Cir. 2002). One panel of the Sixth Circuit has stated that in order to deem employees "similarly-situated," a court should "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee" as opposed to assuming that only specific factors must be present for an employee to be found similarly-situated. *Gibson v. Shelly Co.*, 314 F. App'x. 760, 771 (6th Cir. 2008) (noting that comparable employees do not necessarily have to have dealt with the same supervisor or be subject to the exact same standards). In *Mitchell*, a case involving allegations of differential disciplinary action, another panel of the Sixth Circuit listed the following as relevant considerations:

> [That] the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

14

964 F.2d at 583.

Given these considerations, the Court has analyzed whether the proposed comparators—Simmons, Bryant, Bailey, and Prater—are similarly-situated to plaintiff. The Court first notes that at the time plaintiff received the disciplinary actions—the suspension, the final warning, and the termination—plaintiff was a captain, a supervisory position with supervisory duties over subordinate security officers. In contrast, Simmons, Bryant, and Bailey were all security officers at the time they received the disciplinary actions referenced in plaintiff's response brief.[3] In addition, while not dispositive for the similarly-situated inquiry, it is unclear whether plaintiff, as a captain, was supervised or reported to the same supervisors as Simmons, Bryant, or Bailey, all security officers. Plaintiff testified at his deposition that as a captain, he supervised security officers and had different duties and responsibilities than security officers [Doc. 25-2, pp. 6-9]. Plaintiff also testified that Walden held captains to different standards than security officers, and that captains and security officers had different types of contact with Walden's clients [*Id.*, pp. 52-53].

---

[3]Plaintiff acknowledges that Simmons was a security officer when he was disciplined [Doc. 32, pp. 10, 25-26]. As to Bryant, who first held the position of captain and who was made a security officer because of his job performance, the only discipline plaintiff references was when Bryant was a security officer, not when he was a captain [*Id.*, p. 10]. As to Bailey, the first discipline referenced by plaintiff occurred when Bryant was a security officer, and the second discipline occurred after plaintiff was terminated [*Id.*, p. 11].

While plaintiff has not named Greenberg, a security officer who is younger than plaintiff, as a similarly-situated comparator, plaintiff discusses Greenberg and asserts that Fair treated Greenberg more favorably [Doc. 32, p. 8]. The Court notes, however, that like Simmons, Bailey, and Bryant, Greenberg was a security officer at the time of the referenced discipline and the conduct Greenberg engaged in, desertion of his post, was different than plaintiff's conduct.

15

Furthermore, the conduct for which Bryant and Bailey were disciplined by Walden did not involve aggressive behavior towards subordinates or clients and did not involve issuing instructions to subordinates that violated Walden's policies [Doc. 32, pp. 9-11; Doc. 40, pp. 4, 18-19].[4]  While neither the underlying conduct or the timing of Simmons's discipline is altogether clear from the record [*see* Doc. 32-25], one of the disciplinary actions plaintiff references seems to have occurred after plaintiff was terminated [*Id.*].  Plaintiff also acknowledges in his response brief that Simmons was a security officer at the time he was disciplined [Doc. 32, p. 26].  The Court also notes that several district courts within the Sixth Circuit have found that supervisory and non-supervisory employees should not be compared for purposes of a similarly-situated inquiry.  *Davis v. Ineos ABS (USA) Corp.*, No. 09-773-JGW, 2011 WL 1114409, at *4 (S.D. Ohio. Mar. 24, 2011) (distinguishing between a non-supervisory plaintiff and supervisory comparators); *Quinn-Hunt v. Bennett Enterprises, Inc.*, No. 3:02CV195, 2005 WL 2174053, at *3 (N.D. Ohio. Sept. 7, 2005) ("Supervisory and non–supervisory employees are not similarly situated, and an employer may therefore justifiably treat such employees differently.'"); *Mugno v. Wal-Mart Stores, Inc.*, No. 2:07-CV-199, 2009 WL 737107, at *4 (E.D. Tenn. Mar. 20, 2009) (finding that the plaintiff, a supervisory employee, was not similarly situated to a non-supervisory employee to whom she compared herself).

---

[4]In his response brief, plaintiff asserts that Bryant received discipline for being untimely, calling in sick, for having unauthorized contact with a client, and for going outside the chain of command [Doc. 32, p. 9].  As to Bailey, plaintiff asserts that he received several warnings for sleeping on the job and unwanted physical contact with an employee [*Id.*, p. 11].

16

In sum, given the different supervisory duties, responsibilities, and standards between captains and security officers, the Court finds these two positions are not similarly-situated in the relevant aspects of employment. The Court also finds that the conduct engaged in by the comparator security officers at the time they received their discipline was distinguishable from the conduct engaged in by plaintiff at the time of his suspension, the final warning, and his termination.

Prater is the only comparator identified by plaintiff who held the same position as plaintiff when he was disciplined by Walden. Plaintiff, however, has failed to show that Prater engaged in conduct similar to plaintiff's in all relevant aspects without differentiating or mitigating circumstances that distinguish Prater's conduct or Walden's treatment of him. *Mitchell*, 964 F.2d at 583. The evidence shows that Prater received a written warning on October 9, 2008 for "improper completion of time sheets and not signing in and out as required." [Doc. 32-21; Doc. 32, p. 10]. Five months later, Prater received a supervisor's discussion for a related infraction—habitual tardiness and failure to timely punch-in [*Id.*]. Plaintiff, on the other hand, was suspended and received a final warning for behaving in a nonprofessional and aggressive way to a KUB representative and a Walden client, losing his temper, and behaving aggressively towards KUB employees. Approximately six months after this suspension and the final warning, plaintiff was terminated for behaving in an unprofessional and aggressive manner in violation of the final warning and for drafting and issuing the Overtime and Chain of Command memos in violation of Walden's policies. Plaintiff's conduct underlying each of these disciplines, conduct which involved

17

unprofessional behavior towards clients and instructions to subordinates that violated Walden's policies, is distinguishable from Prater's, which involved issues related to Prater's own job performance. *See, e.g.*, *Robinson v. Carefocus, Inc.*, 1:10-CV-208, 2011 WL 2672037, at *6 (E.D. Tenn. July 8, 2011) ("Hill's unprofessional behavior and comments were an entirely different form of misconduct than Plaintiffs' refusal to perform job duties, which directly affected clients.").

The Court also disagrees that by virtue of being bound by the same employee handbook and the same disciplinary procedures, supervisory and non-supervisory employees are similarly-situated. Such a finding would transform the similarly-situated analysis into one that does not involve the specific facts and circumstances of a particular case and the relevant aspects of a plaintiff's employment versus that of a non-protected employee. In addition, as noted above, plaintiff testified that Walden treated captains differently than security officers [Doc. 25-2, pp. 52-53]. Further, while plaintiff has argued that Walden's operations and human resource managers had discretion to determine what type and level of discipline should be imposed for specific infractions, plaintiff has not set forth evidence that Walden's disciplinary policy did not involve a fact and employee-specific inquiry into the appropriate type and level of discipline to impose for a specific infraction and the Court does not find that the ability to exercise discretion, in and of itself, raises an inference of age-based discrimination. The Court also notes that Vineyard, Walden's general manager, testified that the type of discipline given to an employee is a fact-specific determination that can differ,

18

even for a similar infraction, based on the severity of the infraction, whether it puts others in jeopardy, and whether it is job or safety-related [Doc. 32-6, pp. 5-6].

Viewing the facts and inferences drawn therefrom in the light most favorable to plaintiff, there is no genuine dispute of fact that plaintiff was not in a similar position to the comparator security officers referenced in his brief. Plaintiff's and Prater's conduct also differed, and Walden has submitted evidence regarding the circumstances of Prater's conduct that distinguishes it from plaintiff's conduct. In sum, plaintiff has not put forward evidence that employees outside the protected class who were similarly-situated were treated differently. Accordingly, plaintiff cannot establish prima facie cases for his age-based discrimination claims by showing he was "treated differently from similarly situated employees outside the protected class." *Martin*, 548 F.3d at 410-13.

## 2. Adverse Employment Action

Plaintiff asserts that he was subject to three adverse employment actions, his suspension on December 4, 2008, the final warning he received on December 9, 2008, and his termination on May 19, 2009. Walden argues that even if plaintiff has proved he was treated differently than similarly-situated employees outside the protected class, plaintiff cannot establish a prima facie case of age-discrimination for his claim premised on the final warning because a written warning does not constitute an adverse employment action. Plaintiff argues that the final warning constitutes an adverse employment action [Doc. 32, p. 31 (citing and discussing *Norman v. Rolling Hills Hosp.*, No. 3:10-cv-0500, 2011 WL 1877651, at *6 (M.D. Tenn. May 17, 2011))].

19

In *Andrews v. Lockheed Martin Energy Sys., Inc.*, this Court observed that "[c]onduct that does not amount to a materially adverse employment action includes the following: close supervision, *written warnings*, reassignments without salary or work hour changes, and a one-day suspension with pay." *Id.*, 3:06-CV-42, 2006 WL 2711818, at *11 (E.D. Tenn. Sept. 21, 2006) (emphasis added). In another case considering an employee's contention that she was required to perform cleaning tasks while male employees were not, this Court observed that a "[m]aterial adverse employment action are those that effect 'a significant change in employment status, such as . . . reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Tolliver v. Children's Home-Chambliss Shelter*, 784 F. Supp. 2d 893, 907 (E.D. Tenn. 2011) (quoting *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007)). Another district court has noted that "[d]isciplinary actions such as letters of warning and oral and *written reprimands* do not normally rise to the level of adverse employment actions without some tangible job consequences." *Wedyke v. Potter*, No. 06-14874, 2008 WL 2705501, at *8 (E.D. Mich. July 10, 2008) (finding, in a race discrimination case, that a plaintiff's receipt of letter of warnings did not constitute adverse employment actions) (emphasis added). Furthermore, after reviewing *Norman*, the case cited by plaintiff, the Court concludes that it does not support plaintiff's argument that a written warning constitutes an adverse employment action in the context of an age-discrimination claim. *Id.*, 2011 WL 1877651, at *5-*6. In *Norman*, the district court rejected the plaintiff's argument that a disciplinary writeup constituted an adverse employment action for purposes of a race-based discrimination claim. *Id.* In doing so, the district court distinguished

20

between an adverse action in the context of an anti-discrimination claim versus that of a retaliation claim, noting that the burden in the retaliation context was "less onerous" *Id.* at *6 (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007)).[5]

Upon the Court's review of the evidence and facts surrounding the final warning, the Court has not found any evidence that the final warning resulted in a significant change in plaintiff's employment status, significantly different responsibilities or benefits, or tangible job consequences. The Court therefore concludes that the final warning of December 9, 2008 does not constitute an adverse employment action for purposes of a prima facie case of age-based discrimination.

### 3.    Replacement

Plaintiff also argues that he has established a prima facie case because he has shown that he was replaced by a younger employee. *Mitchell*, 964 F.2d at 582 (stating that a plaintiff may satisfy the fourth prong by showing that he was replaced by a person outside the protected class). In support of this assertion, plaintiff submits an email from Fair to Murphy which states that Coffelt was promoted to patrol supervisor at the HOC on May 19, 2009, the date of plaintiff's termination [Doc. 32-5]. While it is unclear to the Court whether this promotion was to the same position plaintiff held, the Court has found nothing in Walden's submissions addressing this issue. This showing of replacement, however, only

_____

[5]The *Norman* court found that a written warning could be an adverse employment action in the context of a retaliation claim. In this case, as stated *infra*, the Court will assume that the final warning constitutes an adverse employment action for purposes of plaintiff's retaliation claim.

goes towards plaintiff's age-based discrimination claim based on his termination—not his claims based on his suspension and the final warning. Accordingly, the Court concludes that plaintiff has established a prima facie case for age-based discrimination only in regard to his termination.

## B. Retaliation in Violation of the ADEA and the THRA

Plaintiff also alleges that Walden unlawfully retaliated against him in violation of the ADEA and the THRA. He argues that he complained to Walden about age-based discrimination and sexual harassment activities of other employees, that Walden knew of his complaints, and that in retaliation, Walden suspended him, issued the final warning, and terminated him. Walden argues that plaintiff has not established a prima facie case of retaliation under the ADEA or the THRA because plaintiff has not shown that he complained about a protected activity or shown a causal connection between his complaints and Walden's employment actions.[6]

Retaliation claims under the ADEA are analyzed similarly to retaliation claims under Title VII. *See Penny v. United Postal Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) ("Retaliation claims are treated the same whether brought under the ADA or Title VII."); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 n.5 (5th Cir. 1992) (indicating that cases interpreting Title VII are frequently relied upon in interpreting the ADEA). Therefore, in order to make out a prima facie case of retaliation under the ADEA, plaintiff must demonstrate (1) that he

---

[6]Plaintiff's retaliation claim premised on sexual harassment is brought under Tennessee state law, not the ADEA.

engaged in protected conduct; (2) that Walden had knowledge of his protected activity; (3) that Walden took an adverse employment action against him; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007). When a plaintiff has presented only circumstantial evidence, as in this case, courts examine a retaliation claim under the ADEA pursuant to the *McDonnell Douglas* burden-shifting framework. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008); *Mitchell*, 964 F.2d at 582 ("The *McDonnell Douglas/Burdine* formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims under [the] ADEA[.]").

As noted above, Tennessee state courts have "looked to federal case law applying the provisions of the federal anti-discrimination statutes as the baseline for interpreting and applying [the THRA]." *Graves v. Circuit City Stores, Inc.*, No. 03A01-9501-CG-00012, 1995 WL 371659, at *2 (Tenn. Ct. App. June 21, 1995) (citation omitted). While the Tennessee Supreme Court's decision in *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010), calls into question the continuing utilization of the *McDonnell Douglas* framework for state retaliation claims, the standard to be applied at the summary judgment stage is procedural and thus, the Court will apply the *McDonnell Douglas* framework to plaintiff's THRA retaliation claim as well as his to his ADEA retaliation claim. *Moling v. O'Reilly Auto., Inc.*, No. 09-1100, 763 F. Supp. 2d 956, 977-78, 2011 WL 112586, at *20-*21 (W.D. Tenn. Jan. 13, 2011); *Atkins v. Denso Mfg. Tenn., Inc.*, No. 3:09-CV-520, 2011 WL 5023392, at *16 (E. D. Tenn. Oct. 20, 2011). *Bruce v. Western Auto Supply Co.*, 669

23

S.W.2d 95, 97 (Tenn. App. 1984) (stating that federal law interpreting Title VII is controlling for purposes of interpreting the THRA)

As with Title VII, protected activity may include either participation in any proceeding under the ADEA (the "participation clause"), or opposition to a practice declared discriminatory under the ADEA (the "opposition clause"). *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 581 (6th Cir. 2000) (interpreting Title VII's anti-retaliation provision). Plaintiff's retaliation claims fall under the opposition clause. As with Title VII, an employee is protected against employer retaliation under the ADEA for opposing any practice that the employee reasonably believes to be a violation of the ADEA. *Johnson*, 215 F.3d at 579-80. The Equal Employment Opportunity Commission (the "EEOC") has identified the following examples of "opposing" conduct which are protected by Title VII, and by extension, the ADEA: complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under the ADEA; and opposing unlawful acts by persons other than the employer, *e.g.*, former employers, union, and co-workers. *Id.* (citing the EEOC Compliance Manual, ¶ 8006). The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition must be based on a "reasonable and good faith belief that the opposed practices were unlawful." *Id.* The Supreme Court has recently abrogated the rule from this Circuit that a plaintiff is required to establish active, consistent "opposing" activities to warrant protection against retaliation. *Crawford v. Metro. Gov't of Nashville & Davidson County, Tenn.*, — U.S. —,

24

129 S. Ct. 846 (2009), *abrogating Bell v. Safety Grooving & Grinding, LP*, 107 F. App'x 607, 610 (6th Cir. 2004). In *Crawford*, the Supreme Court held that a plaintiff may oppose an unlawful practice by simply responding to questions posed by his employer.

As to what constitutes a causal connection, the Sixth Circuit has stated that a plaintiff must "'proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.'" *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 494 (6th Cir. 2010) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (citation and internal quotation marks omitted)). While closeness in time may be one indicator of a causal connection, *id.*, it has been observed that "temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim[,]" *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007), and "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (discussing *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364-65 (6th Cir. 2001)). Other cases, however, suggest that where an adverse action occurs very close in time after an employer learns of a protected activity, temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *Mickey*, 516 F.3d at 525. Although this issue of the impact of temporal proximity remains unclear, "it does appear that the Sixth Circuit finds that anything over six months is generally insufficient, standing alone, to establish a

causal connection." *Eppes v. Enter. Rent-A-Car Co. of Tenn.*, No. 3:05-CV-458, 2007 WL 1170741 (E.D. Tenn. Apr. 18, 2007). *See Sanchez v. Caldera*, 36 F. App'x 844, 846 (6th Cir. 2002) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000)); *Parnell v. West*, 114 F.3d 1188, 1997 WL 271751, at *2-*3 (6th Cir. May 21, 1997)).

Plaintiff argues that he engaged in protected activities and that his protected activities were causally related to the adverse employment actions taken by Walden.[7] He argues that he verbally complained to Vineyard, Beason, Fair, and Griffin about sexual harassment activities, that his complaints were known to Walden, and that his complaints were the cause of his suspension, the final warning, and his termination.

There is no written evidence of plaintiff's verbal complaints to Vineyard, Beason, Fair, and Griffin, and plaintiff has provided dates for only two of these verbal complaints [Doc. 32, pp. 27-28]. The remaining verbal complaints seem to have taken place during or before the fall of 2008, with one occurring in "the first half of 2008," two in the summer of 2008, and one sometime in the fall of 2008 [*Id.*, pp. 9-11]. As to the dates plaintiff can recall, he alleges that on December 4, 2008, after being told by Fair and Beason that he was to be suspended for acting in an unprofessional manner towards Salmans and other KUB employees, plaintiff verbally confronted Fair and told her that her conduct was unacceptable and constituted sexual harassment [Doc. 32, pp. 27, 30]. Plaintiff also alleges that on December 9, 2008, after he returned from his suspension and was given the final warning,

_____

[7]The Court assumes, for purposes of the retaliation analysis, that the suspension, the final warning, and the termination, constitute adverse employment actions.

26

he verbally confronted Griffin about what plaintiff believed was an incident of sexual harassment by Griffin [*Id.*].

Plaintiff also argues that his April 12, 2009 and May 7, 2009 emails [Doc. 32-24; Doc. 32-28] contain complaints about sexual harassment and age-based discrimination and that he was terminated in retaliation for these complaints. The Court's review of these emails indicates that each contains a litany of complaints about plaintiff's work, the work performance of others, complaints about employees' lack of work ethic and professionalism, and plaintiff's disagreements with Walden's choice of disciplinary actions, its work requirements, and other job and performance-related issues [*See* Doc. 32-24; Doc. 32-28].

In the April 12, 2009 email, the only reference to sexual harassment is as follows: "There was an incident where there were indications of sexual harassment and we were very lucky that this incident never went further. In every case these persons were just moved." [Doc. 32-24]. Plaintiff does not describe this "incident" any further and the email does not contain any allegation against a Walden employee or Walden in general regarding sexual harassment activities. There is also no mention in the April 12, 2009 email of age or of discriminatory or differential treatment based on plaintiff's age or the age of other employees [*Id.*].

In the May 7, 2009 email, plaintiff complains about his work schedule, his problems with Head, Walden's staffing and scheduling decisions, and states that "I . . . will soon by seventy-two years old and it seems it puts a strain on the younger people to just do their job." [Doc. 32-28]. Plaintiff also references past "complaints" about unspecified issues, states that

27

he is dissatisfied with work, and makes general complaints such as "[w]e are told to write people up and when we do nothing happens that I am aware of" and "[s]ome people continue to violate policy and never have to answer for their violations." [Doc. 32-28]. The May 7, 2009 email contains no mention of sexual harassment and, beyond the reference to plaintiff's age and the "strain on younger employees," no mention of age-based discrimination or differential treatment based on age.

Applying the above standards for determining whether a plaintiff has complained of a protected activity, the Court determines that plaintiff's complaints do not qualify as "opposition" under the ADEA. Plaintiff's alleged verbal complaints from 2008 concern sexual harassment—not age-based discrimination prohibited under the ADEA. Viewing the facts in the light most favorable to plaintiff, his one reference in the May 7, 2009 email to his age is that "it puts a strain on younger employees to just do their job." This assertion does not meet the requirements of the opposition clause, even in the wake of *Crawford*. In addition, plaintiff's reference to unspecified sexual harassment activities in the April 12, 2009 email does not include a complaint regarding a Walden employee or Walden as a whole.

The Court also does not find plaintiff's verbal complaints about sexual harassment activities to be causally related to his suspension, the final warning, or his termination. The dates of plaintiff's verbal complaints indicates that the complaints for which plaintiff can recall the dates occurred *after* or contemporaneous to his suspension and final warning. The verbal complaints plaintiff referred to for which he does not provide dates occurred in "the

28

first half of 2008," in the summer of 2008, and sometime in the fall of 2008. Moreover, plaintiff testified that he did not believe his suspension was retaliatory [Doc. 25-2, pp. 27-48], and because it is undisputed that the final warning was based on the same conduct underlying plaintiff's suspension [Doc. 25-2, p. 66; Doc. 32, p. 15], it is unclear as to how the final warning constituted a retaliatory action and the suspension did not. In addition, these verbal complaints came six months prior to plaintiff's termination and approximately five months before the single reference in the April 12, 2009 email to a sexual harassment incident.

In sum, there is no evidence in the record to reflect that plaintiff complained to Walden about unlawful discrimination on the basis of age. Even viewing the evidence in the light most favorable to plaintiff, plaintiff's complaints in his May 7, 2009 email do not show that he engaged in protected activity by protesting a practice declared discriminatory under the ADEA and his complaints in his April 12, 2009 email do not show that he engaged in protected activity regarding sexual harassment activities. Moreover, absent any additional evidence of retaliatory conduct, the Court does not conclude that plaintiff's verbal complaints on December 4, 2008, and December 9, 2008, six months prior to his termination, are sufficient to establish a causal connection to his termination. Walden is thus entitled to summary judgment on plaintiff's claims of retaliation under the ADEA and the THRA.

### C.    Pretext

Under the *McDonnell Douglas* framework, once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason

29

for the adverse employment action. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113-14 (6th Cir. 2001). If the defendant makes the appropriate showing, the plaintiff carries the burden of persuasion and must demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-55 (1981). As explained above, plaintiff has established a prima facie case for age-based discrimination premised on his termination. Plaintiff has failed to establish prima facie cases of age-based discrimination premised on his suspension or the final warning and for his retaliation claims.

Walden has stated that plaintiff was suspended and issued a final warning because the company received complaints that plaintiff behaved unprofessionally and in an aggressive manner towards a Walden client representative and behaved aggressively towards KUB employees. Walden has stated that plaintiff was terminated because he behaved in an unprofessional and aggressive manner towards Simmons and Head, conduct which violated the previous final warning, and because he drafted the Overtime and Chain of Command memos which violated Walden's policies and issued the memos to subordinate security officers. Plaintiff has not disputed that these are legitimate, non-discriminatory reasons for Walden's actions [Doc. 32, p. 23-24]. Thus, Walden has met its burden of production and the burden of persuasion is now on plaintiff to show discriminatory intent, which he can demonstrate by showing that Walden's reasons for his termination were pretextual.

To establish that a defendant's proffered reason is pretext, a plaintiff may show one of the following: (1) the reason has no basis in fact; (2) the reason did not actually motivate

the challenged conduct; or (3) the reason was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (internal quotations and citation omitted). The first and third showings of pretext consist of evidence attacking the credibility of the employer's proffered motivation for the termination, such as evidence that the proffered reason for the plaintiff's discharge never happened, that the reasons were factually false, or that other employees outside the protected class were not terminated even though they engaged in substantially identical conduct as that which the employer contends motivated the plaintiff's discharge. *See Jones v. Potter*, 488 F.3d 397, 406 (6th Cir. 2007) (describing a showing of pretext under the *McDonnell Douglas* framework for a claim under the ADA). In making the second showing, a plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal." *Mischer v. Erie Metro Hous. Auth.*, 168 F. App'x 709, 715 (6th Cir. 2006) (discussing a showing of pretext under the *McDonnell Douglas* framework for a claim under Title VII) (emphasis in original). In other words, instead of disputing the facts, the "plaintiff attempts to indict the credibility of his employer's explanation" and show "that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup[]" for the illegal discrimination. *Id.*

As to pretext, plaintiff makes the following arguments: Walden's reference to the Chain of Command and the Overtime memos as grounds for his termination were not the real reasons for the termination decision; plaintiff was singled-out and treated differently from

other similarly-situated comparators outside of the protected class because of his age; because security officers and captains are comparable employees; because Fair discriminated against older employees in her hiring practices; and because managers had discretion in the type of discipline to impose.

The Court finds that plaintiff has not shown pretext under the first or the third showings. Plaintiff has presented no evidence, beyond his personal belief, that Walden's reasons for the adverse employment actions never happened, that the reasons were factually false, or that the stated reasons were insufficient to motivate the challenged conduct.[8] Plaintiff argues that he discussed the substance of the Overtime memo with Griffin before drafting it and that the memo was posted days before it was used as a justification for his termination [Doc. 32, pp. 18-19]. Plaintiff also asserts that Vineyard testified at his deposition that the Chain of Command memo was only a "minor" reason for his termination and that Vineyard did not view the Overtime memo as one of the reasons for the termination decision [*Id.*, p. 20; Doc. 32-6, pp. 17-20].

The Court does not find this evidence to show pretext. First, it is undisputed that Vineyard, Fair, and Griffin, were all involved in the termination decision and undisputed that Walden stated three reasons for plaintiff's termination—the Chain of Command memo, the Overtime memo, and plaintiff's aggressive behavior towards Simmons and Head in violation

---

[8]Plaintiff denies in his response brief that he yelled or used profanity towards Simmons and Head during the verbal confrontation. However, in his complaint, plaintiff alleged that an incident occurred between himself, Simmons, and Head [Doc. 1-1, p. 18, ¶ 27], and Walden submitted an affidavit by Fair in which she states that Simmons and Head complained to her that plaintiff had used profanity towards them while they were on a shift [Doc. 25-3, ¶ 3].

of plaintiff's previous final warning. The final warning itself stated that future violations of the warning would result in immediate termination. Thus, even if Vineyard did not view the Overtime memo as a basis for the termination decision, there is no evidence that plaintiff's aggressive behavior in violation of the final warning and his issuance of the Chain of Command memo were not reasons or were insufficient reasons for the termination decision. In addition, according to plaintiff's testimony, he did not show Griffin a draft of the Chain of Command memo before posting it for the security officers [Doc. 32-1, pp. 11-12], and there is no evidence that none of the three decision makers did not view the Chain of Command memo as a reason for plaintiff's termination. Plaintiff also testified at his deposition that he has no knowledge regarding Walden's investigation into the verbal confrontation with Simmons and Head, that he never discussed Simmons or Head's complaints about the confrontation with anyone at Walden, that plaintiff has no reason to know whether the decision-makers believed Simmons and Head's allegations, and that cursing at subordinate employees was inappropriate under Walden's policies [Doc. 32-1, pp. 10-11]. In sum, plaintiff has not shown that the reasons given by Walden were not the real reasons or were insufficient reasons for his termination.

As to the second showing of pretext, whether the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that Walden's explanations are pretext for illegal discrimination, the Court finds that plaintiff has also not established pretext in regard to this showing. As explained above, *supra* Section III, Part A, subpart 1, the Court considered the proposed similarly-situated comparators identified by plaintiff and concluded

33

that Simmons, Bryant, Bailey, and Greenberg were all security officers and not similarly-situated to plaintiff in terms of the relevant aspects of their employment. The Court also concluded that Prater, the only employee identified by plaintiff who was a captain at the time of the referenced discipline, did not engage in conduct similar to plaintiff's conduct in relation to any of the adverse employment actions. Plaintiff has not offered any additional comparators for purposes of his pretext argument and the Court's previous analysis is equally applicable here.

Plaintiff also argues that before Walden hired Fair, almost 10% of Walden's employees in Knoxville were as old as plaintiff, that this number decreased after Fair was hired, and that this raises an inference of a discriminatory pattern of hiring [Doc. 32, pp. 6, 26]. The Sixth Circuit has addressed whether evidence regarding an employer's alleged discriminatory pattern of hiring employees constituted sufficient circumstantial evidence of discrimination. *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 942-43 n.7 (6th Cir. 1987). In *Simpson*, the court of appeals determined that statistical evidence provided by the plaintiff regarding the hiring practices of his employer was insufficient to support an inference of discrimination. *Id.* at 942-44. The *Simpson* court noted that the plaintiff had only relied on a small sample of employees in calculating the alleged statistical pattern, had not provided the relative qualifications of the employees hired and the positions to which they were assigned, and had failed to provide "vital information regarding the pool of applicants and whether, for example, qualified older employees were available or applied for those jobs." *Id.* at 943-44. The *Simpson* court also noted that the average age of employees "always

34

changes" and "[s]ince the departure of even one older employee will inevitably produce a reduction in average age, the fact that the average age in [the plaintiff's] small department decreased . . . due to his discharge demonstrates nothing of statistical significance." *Id.* at 943.

While the Sixth Circuit has noted that small statistical samples *can* serve as circumstantial evidence making discrimination more likely when coupled with other circumstantial evidence of discrimination, *see Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 593 (6th Cir. 2002), here, plaintiff has provided no evidence regarding the qualifications of Walden's applicant pool, no information regarding the circumstances surrounding the employment of older employees whose positions ended in the relevant period, no reasons for the hiring of new employees from the applicant pool, and no information regarding the makeup of the pool. Given the foregoing, and without more evidence or specific information about the older individuals who were terminated, retained, or hired, and the circumstances of the employment decisions, along with more information on the relevant pool of applicants, the Court finds plaintiff's argument insufficient to show pretext.

Plaintiff also argues that Fair, whom plaintiff alleges favored younger employees, approved all discipline, including plaintiff's, and had discretion in imposing discipline. However, Fair's deposition testimony, which plaintiff cites for this proposition, does not state that she approved all discipline. Rather, Fair testified that she discussed plaintiff's suspension and agreed with it, but that she did not have to approve it [Doc. 40-2, p. 10]. Furthermore, the Court again notes that plaintiff has asserted that Vineyard, Griffin, and Fair

were all involved in the decision to terminate him, not only Fair, and that plaintiff has submitted no evidence that Walden's practice in giving managers discretion, by itself, is evidence of discrimination.

Finally, while a plaintiff may rely on the same evidence that the plaintiff used to establish a prima facie case to establish pretext, *see Burdine*, 450 U.S. at 255 n.10, in this case, evidence that plaintiff was replaced by a younger employee, the Court finds that plaintiff has not presented other circumstantial evidence of discrimination to create a genuine issue of material fact, and no evidence that Walden's reasons were not the real reasons for the termination decision. Accordingly, viewing all of the evidence individually and together, the Court does not find that plaintiff has met his burden of showing pretext under the second showing.

### D.     State Claims for Retaliatory Discharge

Plaintiff also claims retaliatory discharge under Tennessee common law. A claim for retaliatory discharge under Tennessee common law requires plaintiff to show that (1) an employment-at-will relationship existed; (2) plaintiff was discharged; (3) the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in Walden's decision to discharge plaintiff was his exercise of protected rights or compliance with a clear public policy. *Crews v. Buckman Labs. Int'l,Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002). *See also Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002). If plaintiff establishes a

prima facie case, Walden then has the burden of demonstrating a legitimate, non-discriminatory reason for the adverse employment action. *See Cooper v. Wyndham Vacation Resorts, Inc.*, 570 F. Supp. 2d 981, 988 (M.D. Tenn. 2008) (citing *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993)). The burden then shifts back to plaintiff to prove that Walden's reasons are pretextual. *See Hall v. Wal-Mart Stores East, LP*, 637 F. Supp. 2d 588, 599-600 (M.D. Tenn. 2009) (quoting *Frizzell v. Mohawk Indus.*, No. M2004-01598-COA-R3-CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006)).[9]

In support of his opposition to Walden's motion for summary judgment on his common law retaliatory discharge claim, plaintiff relies on the same arguments he made in regard to his ADEA and THRA retaliation claims. In *Allen v. McPhee*, the Tennessee Supreme Court adopted the rule that "close temporal proximity of a complaint and a materially adverse action are sufficient to establish a prima facie case of causation." *Id.*, 240 S.W.3d 803, 823 (Tenn. 2007) (discussing causation in the context of a THRA claim). Likewise, close temporal proximity is sufficient circumstantial evidence of a causal link for common law retaliation claims. However, as explained above in regard to plaintiff's

---

[9]"[I]n *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010), the Tennessee Supreme Court called into question continued application of the *McDonnell Douglas* burden-shifting framework in state retaliatory discharge. However, in *Moling v. O'Reilly Auto., Inc.*, — F. Supp. 2d —, No. 09-1100, 2011 WL 112586 (W.D. Tenn. Jan. 13, 2011), the district court analyzed the relevant issues and concluded that the standard applied at the summary judgment stage is procedural rather than substantive. The district court therefore analyzed the plaintiff's state law retaliatory discharge claim using the *McDonnell Douglas* framework." *Campbell v. Eagle Bend Mfg., Inc.*, No. 3:10-CV-24, 2011 WL 2471493, at *6 n.2 (E.D. Tenn. June 22, 2011). This Court will also apply the same burden-shifting analysis to plaintiff's retaliatory discharge claim under Tennessee common law.

retaliation claims under the ADEA and the THRA, plaintiff has not shown that he engaged in protected activities that were causally related to adverse employment actions by Walden. Furthermore, as explained *supra*, plaintiff has not presented evidence of pretext.

Although claims under the TPPA, Tenn. Code Ann. § 50-1-304, and the Tennessee common law are similar in many respects, they are not identical and the elements of the two claims are different. In contrast to plaintiff's common law claim, to establish a claim for retaliatory discharge under the TPPA, plaintiff must show (1) his status as an employee of Walden; (2) his refusal to participate in, or remain silent about, illegal activities; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination by Walden. *Anderson*, 857 S.W.2d at 559. Because he must prove an exclusive causal relationship, plaintiff's claim that his termination violated the TPPA involves a higher burden than his claim for common law retaliatory discharge. *See Gager v. River Park Hosp. & Southeastern Emergency Servs. P.C.*, No. M2007-02470-COA-R3-CV, 2009 WL 112544, at *8 (Tenn. Ct. App. Jan. 14, 2009) (stating that the "inability to sustain a common law retaliatory discharge claim, which includes a lower standard of proof, i.e., that the employee's activities only be a substantial factor in the decision to terminate, necessarily dooms a statutory retaliatory discharge case").

Given the heightened burden of proving a claim under the TPPA, the Court's findings in regard to plaintiff's failure to establish a prima facie case of retaliation under the ADEA, the THRA, and Tennessee common law, and because there is even less evidence of an exclusive causal relationship given plaintiff's assertion that his complaints about age-based

38

discrimination and sexual harassment were both the exclusive reasons for his discharge, the Court concludes that plaintiff's TPPA claim also fails.

## IV. Conclusion

For the reasons explained herein, Walden's Motion for Summary Judgment [Doc. 25] will be **GRANTED** and all claims brought by plaintiff will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** this case. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

39